UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    Case No. 3:14-cr-144-J-32JRK

RICHARD SCOTT HILL

_____/

## SENTENCING MEMORANDUM

The defendant, **RICHARD SCOTT HILL**, by and through the undersigned counsel,

files the following sentencing memorandum for the court's consideration asserting that a

sentence of time served, is "sufficient, but not greater than necessary, to comply with the

purposes" of sentencing. The grounds upon which this motion is based are as follows:

## HISTORY OF THE CHARGE

1.     On May 8, 2011, Richard Scott Hill was arrested by the St. Johns County

Sheriff's Office for the offense of Possession of Firearm by Convicted Felon, Burglary to a

Conveyance and Grand Theft (PSR ¶44). Mr. Hill was transported to the St. Johns County

Sheriff's Office and questioned by law enforcement.

2.     During the questioning, Mr. Hill cooperated with law enforcement and confessed

to all the crimes he had committed, which included numerous charges out of St. Johns

County and Duval County occurring from May 2, 2015 to May 8, 2015.

3.     On May 9, 2015, Mr. Hill went to court for his first appearance on the Possession

1

of Firearm by Convicted Felon, Burglary to a Conveyance and Grand Theft out of St. Johns County. (PSR¶44) The Public Defender's Office was appointed and a bond was set. Mr. Hill remained in custody.

4. Three days later, on May 12, 2011, Mr. Hill appeared in court again in St. Johns County. He was brought to court for his first appearance on the two charges out of Duval County in which he had confessed. Those charges would become State Case No. 2012-CF-4407 (PSR ¶61) and State Case No. 2012-CF-4403 (PSR ¶62), the instant case.

5. Eight additional charges out of St. Johns County. (PSR ¶46, 47, 48, 49, 50, 51, 52, and 53) were placed against Mr. Hill on May 17, 2011.

6. On January 9, 2012, Mr. Hill entered pleas of nolo contendere to all charges out of St. Johns County and was sentenced to 68 months on the first charge (PSR ¶44) and a concurrent sentence of 5 years on all the remaining charges (PSR ¶46, 47, 48, 49, 50, 51, 52, and 53). Mr. Hill had discussions with his attorney about taking care of everything at the same time, including the Duval County cases. He was told he would have to go Duval County to face those charges. No one ever contacted Duval County on his behalf to handle the pending charges. After his sentencing hearing, Mr. Hill anticipated being transferred to Duval County. He was not.

7. Mr. Hill was transferred to the Reception and Medical Facility in Lake Butler, Florida for his processing, classification and placement. He was eventually transferred to Okaloosa Correctional Institution to serve the remainder of his sentence.

8. Once in state prison, Mr. Hill sent Notices to the State Court of his whereabouts.

2

9. On June 23, 2012, Mr. Hill filed a pro se Notice Of Expiration Of Speedy Trial.

10. On July 16, 2012, Mr. Hill was brought to Duval County to face the pending charges. The two Informations out of Duval County charging Mr. Hill were filed on July 27, 2012, once he was returned to Duval County.

11. On October 31, 2012, the Public Defender filed a Motion to Discharge which was orally denied by court on January 7, 2013. On March 28, 2013, the Public Defender filed a Renewed Motion For Discharge and Supporting Memorandum Of Law. Again the motion was denied. This time by written order on July 11, 2013.

12. On September 30, 2013, Defendant filed a Petition For Extraordinary Writ to the DCA.

13. The Mandate[1] was issued on February 18, 2014, granting the petition and discharging the case upon the speedy trial rule.

14. On March 6, 2014, the defendant's Motion to Dismiss pursuant to the Order issued by the 1st DCA was granted. Charges were dismissed. Mr. Hill was returned to state prison. Once returned to state prison, Mr. Hill applied to a work camp. His application was approved and he was awaiting bed space. On September 16, 2014, Mr. Hill's name was called and he was told to gather up his belongings. He was excited, believing that he was being transferred to the work camp. He was not.

15. On August 28, 2014, the United States Attorney's Office indicted Mr. Hill on the

---

[1] The Mandate is attached as Exhibit One.

offense of Possession Of A Firearm By A Convicted Felon, a charge from State Case No. 2012-CF-4403. Mr. Hill was brought to federal court on September 16, 2014 pursuant to a Writ of Habeas Corpus ad Prosequendum to face prosecution on charges which had been dismissed by the 1st DCA for violation of speedy trial.

## TITLE 18 UNITED STATES CODE §3553(a)(1), THE HISTORY AND CHARACTERISTICS OF RICHARD SCOTT HILL

Richard Scott Hill was born on December 6, 1976 in Portsmouth, Virginia. He was one of four children, seven years younger than the youngest sibling. He had a very troubling childhood. His parents, Ronald and Debbie Hill, divorced when he was a toddler. Within three years, his mother married his father's brother (Mr. Hill's uncle), Andrew Hill. This caused a split within the extended family and Mr. Hill's family became outcasts. Not only was Mr. Hill an outcast from the extended family but also an outcast within his immediate family. He was teased and ridiculed as a child by his mother and step-father. The ridicule came from Mr. Hill's behavior. Mr. Hill has Tourette Syndrome[2]. He was not diagnosed until the age of eleven. Once diagnosed, the ridicule lessened.

School was difficult for Mr. Hill. Although gifted, Mr. Hill was placed in emotionally handicapped classes because of the Tourettes as well as Attention Deficit Disorder. Being place in special classes labels you among your peers, making it difficult to

---

[2] Tourette Syndrome is an inherited disorder with onset in childhood, characterized by multiple physical (motor) tics and at least one vocal (phonic) tic. These tics characteristically wax and wane.

4

socialize. He began to act out, causing problems at school and with the law. Mr. Hill's first run-ins with the law were at age fourteen. At that time, Mr. Hill was placed in mental health facilities which continued throughout his teenage years. He was committed by his mother to University Behavioral Center in Orlando, Florida as well as La Amistad in Maitland, Florida[3].

At the age of seventeen, while Mr. Hill was in University Behavioral Center for the second time, his sister's family moved into the family home. When Mr. Hill was released from University Behavioral Center, he learned that his sister's husband had had an affair with his step-father, Andrew Hill. His brother in law left the home and his step-father remained. The affair caused a strain on the family. His mother wanted to forgive her husband and remain in the marriage. This, too, caused a strain on the family.

Within a very short time, the family completely fell apart. Mr. Hill returned home from school one day to find the house empty. His mother and step-father had left him, his sister and his older brother a note stating that they had moved to Jacksonville for a fresh start. (His oldest brother no longer lived in the family home.) The only thing left was the refrigerator, washer, dryer, stove and a few clothes. Even the electricity had been turned off. Eventually his sister sold the items she could, without Mr Hill's knowledge, and she, too, left the home. Mr. Hill and his brother Michael remained in the home for several weeks. When it was no longer feasible to remain, they moved in with friends, jumping from home to home.

---

[3] Mr. Hill's records from University Behavioral Center and La Amistad have been destroyed.

They finally moved into an efficiency apartment together and Mr. Hill dropped out of school to support himself. He began by working odd jobs, but it was almost impossible to stay above water. He had run-ins with the law for the next five years, struggling to get by.

In 2000, his life turned around. He found that he had a skill at painting houses. He started his first business called Richard Hill Painting. He had some success with that business and incorporated in 2003, calling it Richard Hill, Inc. Eventually his business became Paint Life, Inc. He ran that business from 2006 until his arrest. He was successful at the business and became respected by the community. Richard Ramsey of R.G. Ramsey Construction, Co., Inc. employed Mr. Hill for seven years as a sub-contractor. He describes Mr. Hill as *reliable, doing quality work*. Mr. Ramsey will *assist him in getting a job upon his release and will recommend him for employment to all places he applies[4]*.

Mr. Hill experimented with drugs early in his life, but drugs did not become an issue until later. In 2005, Mr. Hill was diagnosed with a herniated disc and pinched sciatic nerve. The condition may have begun at age nineteen when he fell off a roof, but was later aggravated after a car accident in 2005. After the car accident, Mr. Hill was proscribed Roxicodone for his back. He used the pills as prescribed until the death of his brother.

In 2008, Mr. Hill's brother, Michael, shot and killed his two sons, ages seven and ten, shot his estranged wife, Bonnie Hill, and his step-father, Andrew Hill, then turned the gun on himself. Bonnie Hill and Andrew Hill survived. Right before Michael Hill made this

---

[4] A letter from Richard Ramsey is attached as Exhibit Two.

decision to kill his family, he called Mr. Hill. When Mr. Hill received the phone call from his brother he was in a business meeting. He saw that it was his brother on the caller ID and made the decision to let the call go to voice mail. He would call him back later. By the time he called back, he was too late. After learning that his step-father had molested his children, Michael Hill had already shot and killed his family and then killed himself. The guilt Mr. Hill feels from not answering that call is overwhelming. He lives everyday believing that if he had just answered the phone, everything would have turned out differently. He has never sought treatment for his guilt and depression. Instead he began to self-medicate.

It was easy at first to self-medicate because he had a prescription for six 30 milligram pills per day of Roxicodone for his back pain, and four 2 milligram pills per day of Xanax for his Tourette Syndrome. Business was good and he had the money to buy the extra pills he craved off the street. He eventually got caught up in a cycle he couldn't keep up with. The abuse of the pills affected his work, reducing the money he needed to sustain his addiction. In the end, he tried to take his own life. On the night of May 2, 2011, he consumed sixty bars of Xanax, hoping to end his life. He lay down on the bed with a plastic bag on his head. Instead of dying, he was awakened by a "friend" with the idea to commit the crimes of which he currently stands convicted. He burglarized cars to support his habit. He was caught on May 8, 2011, arrested and has been incarcerated ever since. It saved his life.

Mr. Hill no longer wants to die. He has one person in his life to live for, that is his daughter. She is fifteen years old and means everything to him. She has not given up on her

father. She loves him unconditionally and is waiting to start a life with him again. She visits him at the jail and writes him often.[5] Mr. Hill is out of his drug induced fog. He feels like he has overcome his drug addiction, but is aware that it is something he will struggle with the rest of his life. He is open to substance abuse treatment to help in the future and give him the coping skills necessary to live drug free. He is thankful the Court can give him the substance abuse treatment he needs as well as bereavement counseling to handle his guilt and depression from the loss of his brother.

## CONCLUSION

Mr. Hill is under sentence for crimes he committed from May 2, 2011 to May 8, 2011. He received a sentence of sixty-eight months in one case (PSR ¶44) and a concurrent sentence of five years on the remaining eight cases (PSR ¶46, 47, 48, 49, 50, 51, 52, and 53). He has a tentative release date of October 27, 2016[6]. Mr. Hill was in the custody of Duval County from July 16, 2012 until March 6, 2014, almost two years fighting the Motion To Dismiss[7] and has now been in federal custody at the Baker County Detention Center from September 16, 2014 to the present (approximately eight months). The two years he served in state custody he was housed in the Duval County Jail. Serving county time is much harder

---

[5] A drawing by Mr. Hill's daughter is attached as Exhibit Three.

[6] The Department of Corrections release information is attached as Exhibit Four.

[7] Mr. Hill asserts that he filed the Motion For Expiration of Speedy Trial as a means to get back to Duval County. He was always willing to negotiate his case, but his lawyers in state court felt like they could win a dismissal on speedy trial grounds, so negotiations never occurred.

8

than serving state prison time and certainly harder than serving federal prison time. Mr Hill has served two years and eight months of hard time as opposed to serving his time in a Work Camp, allowing him to work, seek substance abuse treatment and to earn money for his future.

Mr. Hill is asking the Court to sentence him to a sentence which will allow him to be released when his state sentence ends or to time served. Both can be followed by three years of supervised release. Mr. Hill has been punished for his crimes. The prosecution in federal court gives the government an additional felony conviction and Mr. Hill's admission of the crime. Supervised release is also punishment, but will also give Mr. Hill the opportunity to prove to everyone that he is not the person described by these criminal acts. He can get the substance abuse treatment he needs, start over with his business and make financial restitution for the items he took.

The sentencing court is not bound by the guideline chart and its division into zones to determine whether a sentence of imprisonment is required or reasonable. Pursuant to Title 18 United States Code §3582, the court is directed that "in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed," the court shall "consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction or rehabilitation." The statute dictates that the Court is to consider whether to impose imprisonment with the same 3553(a) factors used to decide the length of imprisonment. A sentence of time served or time comparable to the end of his state sentence would be

"sufficient, but not greater than necessary, to comply with the purposes" of sentencing.

**DATE: MAY 20, 2015**

<div style="margin-left: 40%;">

**DONNA LEE ELM**
**FEDERAL DEFENDER**

Respectfully Submitted By:

*/s/ Susan Good Yazgi*
Susan Good Yazgi
Assistant Federal Defender
Florida Bar No. 0500739
200 West Forsyth Street, Suite 1240
Jacksonville, Florida 32202
Telephone: (904) 232-3039
Fax: (904) 232-1937
Email: susan_yazgi@fd.org

</div>

<div style="text-align: center;">

**CERTIFICATE OF SERVICE**

</div>

**I HEREBY CERTIFY** that on this 20th day of May, 2015, a true copy of the foregoing was served by electronic notification to Frank Talbot, Office of the United States Attorney.

<div style="margin-left: 40%;">

*/s/ Susan Good Yazgi*
Susan Good Yazgi

</div>

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 3:14-cr-144-J-32JRK

RICHARD SCOTT HILL

_____/

## EXHIBIT ONE: 1ST DCA MANDATE

# M A N D A T E

From

## DISTRICT COURT OF APPEAL OF FLORIDA

### FIRST DISTRICT

> **FILED**
>
> MAR - 6 2014
>
> *Ronnie W. Fussell*
> CLERK CIRCUIT COURT

To the Honorable Judges of the Circuit Court for Duval County

WHEREAS, in the certain cause filed in this Court styled:

**RICHARD SCOTT HILL**　　　　　Case No : 1D13-4724

CR-A

v.　　　　　　　　　　　　　Lower Tribunal Case No : 16-2012-CF-4403 - A×××
　　　　　　　　　　　　　　　16-2012-CF-4407 - A×× ×

**STATE OF FLORIDA**

The attached opinion was issued on February 18, 2014.

YOU ARE HEREBY COMMANDED that further proceedings, if required, be had in

accordance with said opinion, the rules of Court, and the laws of the State of Florida.

WITNESS the Honorable Joseph Lewis, Jr., Chief Judge

of the District Court of Appeal of Florida, First District,

and the Seal of said Court done at Tallahassee, Florida,

on this 6th day of March 2014.

*Jon S. Wheeler*

JON S. WHEELER, Clerk
District Court of Appeal of Florida, First District

RICHARD SCOTT HILL,

    Petitioner,

v.

STATE OF FLORIDA,

    Respondent.

_____/

IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-4724



I CERTIFY THE ABOVE
TO BE A TRUE COPY

Opinion filed February 18, 2014.

An appeal from the Circuit Court of Duval County.
Mark Hulsey, III, Judge.

Nancy A. Daniels, Public Defender, Elizabeth H. Webb and Steven L. Seliger,
Assistant Public Defenders, Tallahassee, for Petitioner.

Pamela Jo Bondi, Attorney General and Justin D. Chapman, Assistant Attorney
General, Tallahassee, for Respondent.

CLARK, J.

    By petition for writ of prohibition, Richard Scott Hill alleges that his speedy

trial rights have been violated, and seeks discharge from the charges for which he

is currently facing prosecution in Duval County. We agree that the petitioner is

entitled to a discharge based upon the speedy trial rule, and grant the petition.

On charges unrelated to the instant proceeding, the petitioner was arrested and taken into custody in St. Johns County on May 8, 2011. Subsequently, on May 11, 2011, several warrants issued in Duval County for the petitioner's arrest on five new counts, including armed burglary, dealing in stolen property, and possession of a firearm by a convicted felon. The warrants included appearance bonds on each of the five counts, and were signed by a Duval County judge. Overnight on May 11, 2011, the Jacksonville Sheriff's Office (JSO) sent a series of electronic communications to the St. Johns County Sheriff's Office (SJCSO), first apprising the SJCSO of the Duval County warrants, then stating "if subject bonds out please forward all bonds to the Jacksonville Pre-Trial Detention Facility," and concluding, "please advise when subject is arrested on our charge and a detainer has been placed." In the early morning hours of May 12, 2011, a SJCSO Deputy Sheriff stamped these communications as follows: "Arrest date: 5/12/11, Time: 0156, Place of Arrest: SJSO," and went on to list the Deputy Sheriff's name and ID number. As a result of these events, the following morning, May 12, 2011, the petitioner was taken before St. Johns County Judge Charles Tinlin for a first appearance hearing on the Duval County charges only. At this hearing, the trial court began:

> Richard Scott Hill. All right. Mr. Hill, you have been charged with burglary of a conveyance out of Duval

2

> County, possession of firearm out of Duval County by a convicted felon, dealing in stolen property, another charge of burglary, another attempted burglary and another charge of burglary. These are all out of Duval County, and I know you have got some local charges here.

The trial court went on to read out the bond amounts for each of the Duval County charges. Judge Tinlin asked petitioner, "I appointed the public defender to represent you before, didn't I, sir?" to which petitioner responded, "Yes, sir." Judge Tinlin concluded,

> All right. Public Defender will be appointed and we will notify Duval County you have been picked up on these charges. You will be given credit for any time you spend in our jail awaiting pick up so starting today or yesterday when you were arrested you will get that credit when you appear before the Duval County Judge.

Following this first appearance hearing, no action was taken on the Duval County charges for over a year. On June 27, 2012, the petitioner filed a *pro se* notice of expiration of speedy trial time for those charges. No further action was taken on the Duval County charges until July 27, 2012, when the petitioner was finally formally charged via information with those offenses. Counsel for the petitioner later filed a motion for discharge on speedy trial grounds, and the lower tribunal denied that motion.

3

In the instant petition, the petitioner asserts that he was arrested on the Duval County charges on May 12, 2011, when he was brought before Judge Tinlin for a first appearance hearing on those charges. He was required to be brought to trial within 175 days of that date absent a waiver, as required by Florida Rule of Criminal Procedure 3.191(a). The petitioner was placed "in custody" on May 12, 2011, because he was "arrested as a result of the conduct or criminal episode that gave rise to the crime charged." Fla. R. Crim. P. 3.191(d)(1). Accordingly, he was required to be brought to trial on or before November 3, 2011. Petitioner argues that because he was not brought to trial within 10 days following the notice of expiration of speedy trial time, he must be "forever discharged from the crime." Fla. R. Crim. P. 3.191(p)(3).

In opposition to the petition, the state argues that the petitioner was not actually "in custody" on the Duval County charges on May 12, 2011, and that the proceedings held in St. Johns County on that date constituted a mere "detainer" or "hold." Such a "detainer" or "hold" does not constitute "custody" for purposes of starting the speedy trial clock. See generally State v. Bassham, 352 So. 2d 55 (Fla. 1977); State v. Davis, 458 So. 2d 868 (Fla. 4th DCA 1984); O'Bryan v. State, 326 So. 2d 83 (Fla. 1st DCA 1976). The state further argues that the events of May 11 and 12, 2011, do not amount to an "arrest" because the petitioner was not booked

4

on those charges and the Duval County warrants were not served on the petitioner. The state is correct that a mere "detainer" or "hold" does not amount to an arrest. Here, however, what occurred rose beyond a "detainer" or "hold" to an actual arrest for purposes of the speedy trial rule.

Formal service of a warrant is not required to effectuate an arrest. See, e.g., Trainer v. Broome, 666 So. 2d 1019 (Fla. 4th DCA 1996) (finding an arrest where a defendant was booked and received a first appearance hearing and the authorities had knowledge of his whereabouts, although formal warrants were not served on the defendant until much later in time); Little v. State, 459 So. 2d 1165, 1166 (Fla. 3d DCA 1984) (noting that "[t]here is no requirement under [Rule 3.191] that an arrest is not effective until a formal warrant . . . is subsequently served upon the defendant"). Furthermore, "[f]ormalities such as booking and fingerprinting are not necessary to begin the speedy trial clock . . . . In fact, only four elements are necessary for an arrest to trigger the speedy trial rule." Brown v. State, 843 So. 2d 328, 330 (Fla. 1st DCA 2003) (citing Williams v. State, 757 So. 2d 597, 598 (Fla. 5th DCA 2000) and Brown v. State, 515 So. 2d 211, 212 (Fla. 1987)). These four elements are: (1) that the "arresting agent must have intended to effect an arrest under a real or pretended authority," (2) that the agent "actually or constructively seized or detained the person to be arrested," (3) that the arresting agent

5

"communicated to the person being arrested an intent to arrest the person," and (4) that "the person being arrested . . . understood that it was the intention of the arresting agent to arrest and detain him then and there." Brown, 843 So. 2d at 330 (*citing* Brown, 515 So. 2d at 212).

All four factors are met in this case. Here, via its overnight communication to the SJCSO on May 11, 2011, the JSO indicated, "please advise when subject is arrested on our charge and a detainer has been placed." Shortly thereafter, a St. Johns Sheriff's Deputy stamped these communications with the date and time of arrest, the place of the arrest (the SJCSO), and the deputy's own name. Thus, even though the JSO's electronic communication referenced both an arrest and a detainer, the SJCSO Deputy Sheriff's remarks indicated an intent to effectuate an arrest based upon the Duval County charges. The state argues that the Deputy Sheriff entered this data mistakenly and did not actually intend to express an intent to place the petitioner under arrest on the Duval County charges. The record, however, is totally devoid of any evidence that the St. Johns County Deputy Sheriff lacked an intent to arrest the petitioner. Indeed, the *only* evidence in the record – specifically, the sheriff's having affirmatively stamped and filled out the forms with the date, time, and location "of arrest" – is that the Deputy Sheriff intended to place petitioner under arrest on the Duval County charges.

6

Furthermore, the hearing held before Judge Tinlin also met this factor. Judicial officers of this state are conservators of the peace with actual authority to effectuate arrests. See Fla. Const. art. V, § 19; Fla. Stat. § 901.01 ("[e]ach state judicial officer is a conservator of the peace and has committing authority to issue warrants of arrest, commit offenders to jail, and recognize them to appear to answer the charge"). At the first appearance hearing, Judge Tinlin apprised the petitioner of the Duval County counts, stated "you have been picked up on these charges," and announced bond amounts on each count, thus communicating an intent to detain the petitioner specifically with regard to the Duval County charges. The first appearance hearing, at which a bond was set on the Duval County charges, amounted to an actual or constructive seizure or detention. The intent to arrest the petitioner was communicated very clearly to the petitioner via Judge Tinlin's statements during that proceeding when he advised the petitioner that he had been "picked up on" the Duval County charges, the public defender would be appointed to represent him on those charges, and he would receive jail credit "starting today or yesterday when you were arrested." The petitioner understood these statements to mean that it was the intent of that agent "to arrest and detain him then and there." Brown, 459 So. 2d at 330.

7

The state asserts that the first appearance hearing was held erroneously and that it was therefore a nullity. Thus, the first appearance hearing cannot be considered in satisfaction of the Brown factors. Even assuming *arguendo* that the hearing was held in error, we cannot agree that it constituted a nullity for that reason. Whether the hearing was held mistakenly or not does not negate the fact that the hearing met the four Brown factors. What is more, the simple fact that a first appearance hearing was held here lends additional support to the petitioner's argument that this was an arrest, not a mere detainer or hold. "Except when previously released in a lawful manner, *every arrested person* shall be taken before a judicial officer . . . within 24 hours *of arrest*." Fla. R. Crim. P. 3.130(a) (governing first appearance hearings). The totality of the factors shown here, taken together, indicate that the petitioner was "in custody" on the Duval County charges for purposes of the speedy trial rule as of May 12, 2011, and he was thus required to be brought to trial within 175 days of that date. This indisputably did not happen.

"Prohibition is the appropriate remedy to prevent a trial court from proceeding against an accused after the erroneous denial of a motion for discharge based on a violation of the speedy trial rule." Cespedes v. State, 17 So. 3d 302, 303 (Fla. 4th DCA 2009) (*citing* Walden v. State, 979 So. 2d 1206 (Fla. 4th DCA

2008)). For felony charges, "every person charged with a crime shall be brought to trial . . . within 175 days" of arrest. Fla. R. Crim. P. 3.191(a). As discussed *supra*, the petitioner was arrested for purposes of this rule on May 12, 2011, and was accordingly required to be brought to trial on or before November 3, 2011. He was not brought to trial on or before that date. He filed a Notice of Expiration of Speedy Trial Time on June 27, 2012. The court failed to hold a hearing thereupon within 5 days as required by Florida Rule of Criminal Procedure 3.191(p)(3). Petitioner was also not brought to trial within 10 days of that date as required by the same provision. "A defendant not brought to trial within the 10-day period through no fault of the defendant, on motion of the defendant or the court, *shall* be forever discharged from the crime." Fla. R. Crim. P. 3.191(p)(3) (emphasis added). The mandatory language of this rule requires the petitioner's discharge from the Duval County crimes.

PETITION GRANTED.

THOMAS and ROBERTS, JJ., CONCUR.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No. 3:14-cr-144-J-32JRK

RICHARD SCOTT HILL

_____/

EXHIBIT TWO: LETTER FROM RICHARD RAMSEY

R.G. Ramsey Construction Co., Inc.
450-106 State Road 13N., #453
Saint Johns, Florida 32259
904-545-2973
rgramsey8@yahoo.com

March 18, 2015

**To: Judge Timothy J Corrigan**

Sir my name is Richard G Ramsey I am a licensed Building Contractor in the State of Florida.
The business is R.G. Ramsey Construction Company, Inc.. My wife and myself share ownership of our
business and we have been building new homes, remodeling older homes and renovations since 1992. We
primarily subcontract 95% of the work that we do but we are very capable of performing our own work.
During some of this 23 years of contracting I was fortunate to have a painting subcontractor by the name of
Richard Hill. We called him Rick, he and his employees worked on our jobs for 7 years.

Rick Hill started working on my job as an employee. He worked for Mick's Painting. Mick had some
health issues and decided to stop painting. Rick put together the funds and paperwork and started his own
business at that point and I became one of the contractors that he supplied his painting services. I do not
know any other contractors that he worked for but I did give his name and phone number to potential
clients to do small repairs and painting work on their homes. I do not recommend subcontractors that I
don't trust or feel that are not qualified to to perform the work they are asked to do. I cannot reference any
specific jobs or work that he did for others but I never had any negative comments. I can say that my
clients felt that Rick and his company did a good job. When Rick performed work for R.G. Ramsey
Construction Company, Inc. he was reliable and he did quality work.

If and when Rick is needing employment I would try to assist him in getting a job. The construction
business is an uptick right now and needs quality people who can do quality work. I feel Richard Hill fits
that description and as such I would recommend him for employment to all the places he applies.

Sincerely,

Richard Ramsey
R.G. Ramsey Construction, Co., Inc.



**Richard Ramsey**
*New Homes • Residential Remodeling*

450-106 State Road 13N, #453 • Jacksonville, FL 32259
Cell 904-545-2973 • rgramsey8@yahoo.com
Licensed and Insured CBC 045706

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                        Case No. 3:14-cr-144-J-32JRK

RICHARD SCOTT HILL

_____/

EXHIBIT THREE: A DRAWING BY MR. HILL'S DAUGHTER

This is what I had did for you
for Fathers day. It looks bad. But it took
me like two months. I wanted it perfect,
wen tho its
uglys

happy
Fathers day,
I love you.



This is really Bad But i tried
Lol. :D

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 3:14-cr-144-J-32JRK

RICHARD SCOTT HILL

_____/

EXHIBIT FOUR: THE DEPARTMENT OF CORRECTIONS RELEASE
INFORMATION



FLORIDA
DEPARTMENT of
CORRECTIONS

Governor
**RICK SCOTT**

Secretary
**JULIE L. JONES**

*An Equal Opportunity Employer*

501 South Calhoun Street • Tallahassee, FL 32399-2500

http://www.dc.state.fl.us

STATE OF FLORIDA )
COUNTY OF LEON )

     Personally appeared before me this day Cynthia Becker, whom being duly sworn deposes and says that:

     I am the Correctional Programs Administrator of the Bureau of Classification Management, Classification Services, of the Florida Department of Corrections and have been employed with the Department for over 30 years. Based on this experience as well as information contained within the department's automated records, the following is being provided as to Robert Scott Hill, DC# 539606.

     Hill was received by the Florida Department of Corrections on January 26, 2012, having been sentenced in the Circuit Court of St. Johns County on January 9, 2012, to concurrent counts for the following:

| | |
|---|---|
| Case Number: | 11-924, three counts |
| Term: | Count one – 67.95 months less 240 days jail. |
| | Count two & three – Five years less 240 days jail credit. |
| | The court further imposed a Firearm mandatory in accordance with s.775.087(2) as to each count. |
| Offense: | Possession of Firearm by a Convicted State Felon |
| | Count two – Burglary of a Conveyance |
| | Count three – Grand Theft |
| Date of Offense: | May 8, 2011 |
| | |
| Case Number: | 11-978, two counts |
| Term: | Five years less 240 days jail credit |
| Offense: | Count one – Burglary of a Conveyance |
| | Count two– Grand Theft |
| Date of Offense: | May 8, 2011 |
| | |
| Case Number: | 11-979 |
| Term: | Five years less 240 days jail credit |
| Offense: | Count one – Burglary of a Conveyance |
| Date of Offense: | May 8, 2011 |

Re: Robert Scott Hill, DC# 539606

|  |  |
|---|---|
| Case Number: | 11-980 |
| Term: | Five years less 240 days jail credit |
| Offense: | Count one – Burglary of a Conveyance |
| Date of Offense: | May 8, 2011 |

|  |  |
|---|---|
| Case Number: | 11-981, two counts |
| Term: | Five years less 240 days jail credit |
| Offense: | Count one – Burglary of a Conveyance |
|  | Count two– Grand Theft |
| Date of Offense: | May 8, 2011 |

|  |  |
|---|---|
| Case Number: | 11-982 |
| Term: | Five years less 240 days jail credit |
| Offense: | Count one – Burglary of a Conveyance |
| Date of Offense: | May 8, 2011 |

|  |  |
|---|---|
| Case Number: | 11-983, two counts |
| Term: | Five years less 240 days jail credit |
| Offense: | Count one – Burglary of a Conveyance |
|  | Count two– Grand Theft |
| Date of Offense: | May 8, 2011 |

|  |  |
|---|---|
| Case Number: | 11-984, two counts |
| Term: | Five years less 240 days jail credit |
| Offense: | Count one – Burglary of a Conveyance |
|  | Count two– Grand Theft |
| Date of Offense: | May 8, 2011 |

|  |  |
|---|---|
| Case Number: | 11-985, two counts |
| Term: | Five years less 240 days jail credit |
| Offense: | Count one – Burglary of a Conveyance |
|  | Count two– Grand Theft |
| Date of Offense: | May 8, 2011 |

Florida Statute §944.275(2)(a) and §944.275(3)(a), requires the Department to establish a "maximum sentence expiration date" for a single sentence as well as a "tentative release date" which shall be the date projected for the prisoner's release from custody by virtue of gain-time granted or forfeited as described in this section.

The initial tentative release date shall be determined by deducting gain-time granted from the maximum sentence expiration date. Other gain-time shall be applied when granted or restored to make the tentative release date proportionately earlier; and forfeitures of gain-time, when ordered, shall be applied to make the tentative release date proportionately later.

Re: Robert Scott Hill, DC# 539606

Hill's current maximum and tentative release dates are based on the term imposed as to count one of 11-924 and are calculated as follows:

| Date of Sentence: | January 9, 2012 |
|---|---|
| Sixty-Seven point 95 Months in Days | + 2067 |
| Jail Credit Awarded | - 240 |
| Maximum Release Date: | January 9, 2017 |
| Gain-time Earned: | - 74 |
| Tentative Release Date: | October 27, 2016 |

For offenses committed on or after October 1, 1995, Florida Statute §944.275(4)(b)3, provides that the department may award up to ten (10) days incentive gain-time per month for each month if earned, except that at least eighty-five (85) percent of the sentence must be served day for day without the benefit of gain-time.

Hill's 85% minimum release date is calculated as follows:

85% x 2067 days less 240 days = 1757 + January 9, 2012 = March 05, 2016

Hill is currently out to court and will earn incentive gain-time in accordance with Florida Administrative Code 33-601.101.

The facts stated in the foregoing affidavit are based on information contained in the official files of the Department of Corrections.

Cynthia Becker
Bureau of Classification Management
Department of Corrections

Sworn and subscribed before me
This 11th day of May A.D.
2015, by Cynthia Becker who
is personally known to me.

Notary Public
/cb

JEFFERY S. BRYAN
MY COMMISSION # EE 119597
EXPIRES: August 7, 2015
Bonded Thru Budget Notary Services